# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3862

DANIEL P. ROONEY,

*Plaintiff-Appellant,*

v.

KOCH AIR, LLC,

*Defendant-Appellee.*

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. IP IP01-1228-C-M/S—**Larry J. McKinney**, *Chief Judge.*

———————

ARGUED SEPTEMBER 14, 2004—DECIDED JUNE 6, 2005

———————

Before EASTERBROOK, MANION, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Shortly after he began working for
Koch Air, LLC, Daniel Rooney injured his back. Five years
later, he injured it again. These injuries limited Rooney's
ability to do his job; unable to reach a satisfactory arrange-
ment with the company, he eventually resigned. In
August 2001, Rooney sued Koch Air under the Americans
with Disability Act (ADA), 42 U.S.C. §§ 12101, *et seq.*, and
Indiana state law, claiming that Koch Air had discriminated
against him and constructively discharged him on account
of his disability. He also alleged that Koch Air retaliated
against him in violation of Indiana law for his act of filing

a worker's compensation claim. The case comes to us after the district court granted Koch Air's motion for summary judgment, finding that Rooney had failed to submit evidence showing that a similarly situated nondisabled employee had been treated more favorably than he was. While this may be so, we affirm for a more fundamental reason: he has not shown that he is disabled for purposes of the ADA.

## I

In January 1994, Rooney began working in the Customer Assurance Department of Koch Air, a distributor of heating and air conditioning products. A few months later, Koch Air promoted him to the position of Manager of that department. This position required Rooney to provide customers with technical and warranty support. Often he could do this by telephone, but he also had to make occasional trips to job sites, where he would frequently need to access crawl spaces, bend, kneel, lift, and work at unprotected heights.

In April 1994, only a few months after he was hired, Rooney suffered an injury to his head, neck, and back that required him to undergo a C-4 vertebrectomy and an inner body fusion. After the surgery, he took a three-month leave of absence from work. In August of that same year, Rooney received a work clearance from the Indiana Center for Rehabilitation Medicine that listed several work restrictions. Notably, he was told to avoid crawl spaces and attics, to alternate sitting with 15-30 minutes of standing and walking, and to avoid unprotected heights and repeated bending.

In 1995, Koch Air demoted Rooney to Assistant Customer Assurance Manager, the position he held until he resigned. David Boone, Rooney's supervisor from 1996 until February of 2000, testified that "because of Danny's disabilities and restrictions, he was made the 'inside' person." In other words, Koch Air placed Rooney in the lower job because of his work restrictions. As an Assistant Customer Assurance

Manager, Rooney's duties included addressing customer satisfaction, training end-user customers, and troubleshooting problems with customers' heating and air conditioning units. William Sircy, Rooney's manager after Boone resigned, testified that Assistant Customer Assurance Mangers are also required to make job-site visits, and on the site they "must be able to lift, bend, enter crawl spaces, kneel, squat, and climb stairs and ladders."

Unfortunately, Rooney suffered a second back injury in July 1999. This injury occurred while Rooney was working at Koch Air, when he reached for a lower file cabinet drawer. About eight months later, Rooney underwent a second round of back surgery. After about a month's recovery, he returned to work at Koch Air. Rooney filed a worker's compensation claim for this injury.

After Rooney returned again to full-time work in May 2000, he refused to perform any job-site visits with the exception of two: one on May 8, 2000, and the other on July 31, 2000. His refusal forced Sircy to do all of the job-site visits. Finding that state of affairs problematic, Koch Air ordered Rooney to undergo a functional capacity evaluation. The results of the evaluation indicated that Rooney could perform all the functions required for job-site visits, including being able to bend partially, squat, kneel frequently, and crawl occasionally. On July 11, 2000, Suzanne Pursell, the Operations Manager at Koch Air, sent Rooney an email after receiving the functional capacity evaluation report. In the email she reported that Koch Air was "pleased the FCE's [functional capacity evaluation] report indicated that you could climb ladders on a limited basis, enter crawl spaces on a limited basis, drive to customer sites and training locations and perform other duties temporarily removed from you [sic] job requirements." She went on to explain that the position of an Assistant Customer Assurance Manager included the responsibility to travel to job sites to provide technical assistance to dealers in "trouble shooting

of equipment on performance issues." The email also notified Rooney that his personal doctor, Dr. Peter Hall, should review a copy of the report and "if he disagrees with anything on this report he will need to send us his concerns in writing."

Dr. Hall responded in a brief letter dated July 18, 2000, that acknowledged that he had reviewed the functional capacity evaluation report. He commented that, in his opinion, Rooney had reached "maximum medical recovery" and that he estimated Rooney had a permanent partial impairment of 20% of his body. In a second letter from Dr. Hall dated August 8, 2000, which Rooney submitted for his worker's compensation claim, Dr. Hall indicated that Rooney should not bend, but that he agreed with the functional capacity report that Rooney could "occasionally kneel, crawl, climb ladders and stairs."

These letters set the stage for Rooney's resignation. On September 11, 2000, Sircy issued Rooney a written reprimand for disregarding his instructions to deliver a check for training materials to Radio Shack. Rooney received an employment counseling session as a result of this incident. The next day, Rooney failed to report to work. Pursell called Rooney and told him that he would need to submit a doctor's note for his absence. On either September 12 or 13, Rooney gave Pursell a signed note announcing his refusal to perform any further job-site visits. In the note, Rooney wrote that he was "not mentally or physically comfortable enough at this time to put [himself] into a situation, which could cause further damage." On September 13, Rooney returned to work and Pursell issued him a final written warning for his failure to provide a doctor's excuse for his absence. Nevertheless, at the same time, in light of Rooney's stated position that he could no longer perform job-site visits, Koch Air offered Rooney a new position that did not include that task. On the negative side, the new position came with an hourly rate of pay that was less than what Rooney had been

earning as an Assistant Customer Assurance Manager. Rooney rejected the offer and resigned from Koch Air on September 15, 2000. Shortly thereafter, he filed a complaint with the Equal Employment Opportunity Commission (EEOC) and two months later, after receiving his right-to-sue letter, he brought this action in federal court in August 2001.

Discovery followed in due course. Critically for our purposes, Rooney testified at his deposition that after his surgery in March 2000, he was able to perform all major life activities such as sleeping, bathing, dressing himself unassisted, exercising, and performing basic household tasks. While he continued to experience some pain and discomfort while performing some tasks and was not able to perform some activities to the extent that he would have liked, he never testified that he was unable to perform any major life activities.

After discovery, Koch Air moved for summary judgment. The district court found that Rooney had not identified a similarly situated but nondisabled employee who was treated more favorably and thus granted summary judgment for Koch Air on all of Rooney's ADA claims. It then dismissed without prejudice Rooney's remaining state law claims.

## II

We review a district court's grant of summary judgment *de novo*, construing all facts and drawing all reasonable inferences from those facts in favor of the non-moving party. *Koszola v. Bd. of Educ. of Chi.*, 385 F.3d 1104, 1107 (7th Cir. 2004).

The ADA protects "qualified individuals with a disability" from discrimination in their employment, the hiring process, or promotions. 42 U.S.C. § 12112(a); see also *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 571-72 (7th Cir. 2001).

The statute defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Because Rooney lacked direct evidence of discriminatory motive or intent, he relied on the familiar burden-shifting method outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in pursuing his claims. *Id.* at 802; see also *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir. 1995). He therefore must satisfy the four requirements for a *prima facie* case by submitting evidence at the summary judgment stage that, if believed, would show that: (1) he is disabled within the meaning of the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Amadio v. Ford Motor Co.*, 238 F.3d 919, 924 (7th Cir. 2001). If he is able to prove all four elements, the burden shifts to Koch Air to identify a non-discriminatory reason for its employment decision. *Id.*

Although both the district court and Rooney focused their attention on the fourth element of the *prima facie* case, we think it preferable here to start with the first one: whether Rooney is "disabled," in the special sense that the ADA uses that term. If he is not entitled to protection under this statute, then there is no need to reach the later parts of the inquiry.

An individual can prove that she is disabled for ADA purposes in one of three ways: (1) she has a physical or mental impairment that substantially limits one or more major life activities; (2) she has a record of such an impairment; or (3) she is regarded as having such an impairment by her employer. 42 U.S.C. § 12102(2); *Sutton v. United Air Lines*, 527 U.S. 471, 478 (1999). Rooney pursued his claims against Koch Air under all three methods.

Not all impairments or conditions qualify as a disability within the meaning of the ADA. *Dalton v. Subaru-Isuzu Auto.*, 141 F.3d 667, 675 (7th Cir. 1998). To be disabled, an individual must be so limited in one or more major life activities that she is impaired in her ability to "perform the variety of tasks central to most people's lives." *Toyota Motor Mfg., Ky. v. Williams*, 534 U.S. 184, 201 (2002). Importantly, the inability to perform a particular job does not normally "constitute a substantial limitation in the major life activity of working." 29 C.F.R § 1630.2(j)(3)(i); see also *Mack v. Great Dane Trailers*, 308 F.3d 776, 780 (7th Cir. 2002) ("An impairment that interferes with work-related tasks, however, does not necessarily rise to the level of a disability within the meaning of the ADA."). This is the test that we must apply to Rooney's circumstances.

Rooney testified that from his second injury in July 1999 until his surgery in March 2000, he was unable to shower unassisted and he experienced pain while performing many normal tasks. He also testified, however, that after a brief recovery period following his surgery, he was able to shower unassisted, perform household chores, exercise, and since January 2001, play sports with his children. We do not intend to imply that Rooney's injuries have not affected his life and the lives of his family members, but that is not the question before us. His own testimony leaves no doubt that he is able to perform the tasks central to most people's lives, and this in itself dooms his claim that he is actually suffering from a disability cognizable under the ADA.

Rooney also failed to demonstrate that he has a record of a disability. 42 U.S.C. § 12102(2)(B). To succeed under this theory, Rooney must again show that his impairment "substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Rooney did not submit evidence to this effect. Koch Air had records of his injuries and surgeries, but as explained above, these are not evidence that he was statutorily disabled. Nor do Dr. Hall's letters indicate that

Rooney's impairment substantially limited major life activities. To the contrary, the records indicate that after his surgery in 2000, Rooney was able to perform all major life activities as well as the functions necessary for his job such as occasional bending, lifting, and crawling.

Finally, Rooney offered no evidence to show that Koch Air regarded him as disabled for ADA purposes. 42 U.S.C. § 12102(2)(C). "A person is 'regarded as disabled' when the employer, rightly or wrongly, believes that she has an impairment that substantially limits one or more major life activities." *Cigan v. Chippewa Falls Sch. Dist.*, 388 F.3d 331, 335 (7th Cir. 2004) (citing *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999)). If "the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Mack*, 308 F.3d at 782. That is the case here. Koch Air repeatedly communicated that it believed that Rooney was able to perform all the functions necessary on job-site visits, especially after it received the functional capacity evaluation.

Even if Rooney were able to meet his burden of showing that he is disabled within the meaning of the ADA, his claim would founder at the second part of the *McDonnell Douglas* inquiry, because performing job-site visits is an essential part of the position of an Assistant Customer Assurance Manager. The ADA protects only disabled individuals who can perform the essential functions of their position. To determine whether a job function is essential, we look to the employer's judgment, written job descriptions, the amount of time spent on the function, and the experience of those who previously or currently hold the position. 29 C.F.R. § 1630.2(n)(3); *Basith v. Cook County*, 241 F.3d 919, 927 (7th Cir. 2001). In this case, the job description of the Assistant Customer Assurance Manager requires her to "[t]roubleshoot all units, systems, and controls." Pursell and

Sircy both testified that this included performing job-site visits. Moreover, Rooney admitted that job-site visits were a part of his responsibilities. The fact that Koch Air attempted to ease Rooney's discomfort immediately after his injuries by decreasing the number of job-site visits he was required to perform does not necessarily mean that these visits were not an essential job function. Facilitating injured workers' return to their jobs should not expose employers to future litigation. In this instance, Koch Air took the added step of offering Rooney a new position that would not require him to perform job-site visits, albeit at a lower rate of pay. Thus, even if Rooney could show that he was disabled for ADA purposes, his own letter admits that he could not, or would not, perform an essential function of the job of Assistant Customer Assurance Manager.

Although Koch Air learned during discovery that Rooney had not had a valid driver's license since 1997 as a result of multiple convictions for driving under the influence, we do not place any weight on that fact. We know from *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352 (1995), that after-acquired evidence like this does not bar all relief, although it can limit recoverable damages. (We see no distinction for this purpose between an age discrimination claim like the one in *McKennon* and an ADA claim.) At a minimum, this late revelation would have limited any damages Rooney could recover, because his job required him to drive company vehicles for job-site visits and customer training sessions, and Koch Air naturally required employees driving its vehicles to hold a valid license.

Rooney also alleged that Koch Air constructively discharged him because of his disability. To prevail on a claim for constructive discharge, an employee must show both that a hostile work environment existed and "that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Pennsylvania State Police v. Suders*, 124 S. Ct. 2342, 2347 (2004); see also

*McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004) (citing *Suders*, 124 S. Ct. at 2347). Beyond that, Rooney had to demonstrate that the constructive discharge was the result of his disability. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 440 (7th Cir. 2000). Although Rooney's claim cannot succeed because of our conclusion with respect to his disability, we note as well that on this record he has not shown that the conditions of his employment even approached the intolerable levels normally required in constructive discharge cases. See *Taylor v. Western & Southern Life Ins. Co.*, 966 F.2d 1188, 1191 (7th Cir. 1992) (finding constructive discharge where the employee's boss consistently made racial comments and on one occasion held a gun to his head, took a photo, and later showed it at a staff meeting while making racial jokes); *Brooms v. Regal Tube Co.*, 881 F.2d 412, 417 (7th Cir. 1989) (finding constructive discharge where the employee's human resource manager repeatedly showed her racist pornographic photos and made threatening comments to her including a threat to kill her). The record suggests, to the contrary, that Koch Air made significant efforts to address Rooney's expressed concerns, for example by providing two special chairs, a drafting table, and even offering another position within the company.

Because we find that Rooney is not disabled for purposes of the ADA and that he was unable to perform an essential job function, we do not need to address the district court's finding that Rooney failed to identify a similarly situated employee whom Koch Air treated differently.

## III

For these reasons, the decision of the district court is AFFIRMED.

A true Copy:

   Teste:


                    _____
                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*