UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted December 20, 2006[*]
Decided December 22, 2006

**Before**

Hon. FRANK H. EASTERBROOK, *Chief Judge*

Hon. RICHARD A. POSNER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

No. 06-3368

| | |
|---|---|
| MAY F. NUNN, <br>     *Plaintiff-Appellant,* <br><br>     *v.* <br><br> ILLINOIS STATE BOARD OF <br> EDUCATION, <br>     *Defendant-Appellee.* | Appeal from the United States District Court for the Central District of Illinois <br><br> No. 3:04-CV-03244-RM-BCG <br><br> Richard Mills, <br> *Judge.* |

**O R D E R**

May Nunn worked for the Illinois State Board of Education for over 25 years and was, as her former employer puts it, a "valued employee whose services were in great demand" for most of that time. However, in late 2002, Nunn began acting out of character. For example, in the office she was observed crying hysterically, skipping around her cubicle and chanting, falling into a trance-like state and becoming unresponsive to coworkers, and running through the office exclaiming

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

"Praise Jesus." At times she stopped answering her phone. She also exhibited unusual behavior in the field (her duties included making visits to schools and occasionally attending conferences) such as once during a meeting in January 2003 when she isolated herself in a corner, closed her eyes, and chanted prayers. Following this incident, Nunn's supervisors restricted her from all field work and instructed her to work only at her office in Springfield until further notice.

Nunn's supervisors also ordered her to undergo a psychiatric evaluation to determine her fitness to work. In February 2003 she met with a psychiatrist who diagnosed her with severe bipolar disorder, manic type, with auditory hallucinosis. The psychiatrist opined that, although Nunn was not a danger to herself or others, she was disruptive, had "no insight" into her disorder, and could be expected to get worse without treatment. The psychiatrist recommended that Nunn immediately begin treatment and not return to work until she stabilized. On March 3, 2003, Nunn met with her supervisors to discuss the psychiatrist's report. They advised her that she had one year to seek treatment for her illness and return to work, and they suggested that she use her 144 paid sick days and then take unpaid leave as necessary. Nunn, however, insisted that she was not sick and refused to take any sick leave. Her supervisors asked her to reconsider and tell them within a few days whether she had changed her mind; otherwise, they said, they would have to terminate her employment. After a week passed, the Board scheduled a predisciplinary meeting at which Nunn again stated that she was not ill and did not need medical treatment. Shortly thereafter, on March 23, 2003, Nunn was fired.

In November 2004 Nunn sued the Board, alleging that she was terminated because of a disability in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-13. The Board unsuccessfully moved to dismiss the case on the ground that Nunn had not exhausted her administrative remedies because a charge she had filed with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission alleged retaliation and discrimination based on religion, not disability. After discovery the Board moved for summary judgment; it argued that Nunn was not a "qualified individual with a disability" protected by the ADA, and that, in the alternative, it had terminated Nunn for nondiscriminatory reasons. The district court granted summary judgment for the Board, and Nunn appeals.

Nunn primarily argues that the district court erroneously concluded that she was not a "qualified individual with a disability" because, she maintains, an issue of fact remains about whether she was performing the essential functions of her job. She contends that, at the time of her discharge, she was performing the tasks required of her in her "reassigned" position, and that the district court should not have considered the job description for Principal Performance Consultant, the title she held from 2001 until her termination. Viewing the evidence and drawing all

reasonable inferences in Nunn's favor, we review the grant of summary judgment for the Board *de novo*. *See Dyrek v. Garvey*, 334 F.3d 590, 597-98 (7th Cir. 2003).

Under the ADA, an employer may not "discriminate against a qualified individual with a disability because of the disability." 42 U.S.C. § 12112(a); *see Duda v. Bd. of Ed.*, 133 F.3d 1054, 1058 (7th Cir. 1998). The Board does not dispute that Nunn is disabled within the meaning of the ADA, *see* 42 U.S.C. § 12102(2)(A), (C), but it maintains that she is not a "qualified individual with a disability," that is, someone who "with or without reasonable accommodation, can perform the essential functions of the employment position that [she] holds or desires," *see id.* § 12111(8). The inquiry has two parts: whether the plaintiff "satisfies the requisite skill, experience, education and other job-related requirements" and whether she "can perform the essential functions" of her position. 29 C.F.R. § 1630.2(m). Nunn's qualifications are not at issue, so we turn to the second requirement.

We conclude that Nunn did not a raise a genuine issue of material fact about whether, at the time she was fired, she could perform the essential functions of her job. From 2001 on, Nunn held the title of Principal Performance Consultant. According to her job description, about 40% of her time was to be spent in the field "conducting on-site reviews and technical assistance visits to districts/schools" and another 5% "coordinating with regional, state, and national organizations." After Nunn's behavior became erratic, the Board concluded that she could no longer be an effective representative in the field. Apparently Nunn never challenged the decision to eliminate her field work, and she does not argue now that she was able to perform all the duties of a Principal Performance Consultant. *See Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005). Instead, she asserts that in February 2003 she was "reassigned" to a new position at the Springfield office, and so the job description for Principal Performance Consultant is the wrong benchmark. However, we must consider the employer's assessment of what the essential functions of Nunn's job were, and treat her written job description as evidence. *See* 42 U.S.C. § 12111(8); *Jackson v. City of Chi.*, 414 F.3d 806, 811 (7th Cir. 2005). Nunn submitted no evidence to bear out her assertion that she was transferred to a new position with different duties; instead, the record shows that the Board essentially halved her existing responsibilities until her fitness to work could be assessed. That the Board temporarily decreased Nunn's responsibilities in this way is not evidence that field duties were not an essential job function. *See Rooney,* 410 F.3d at 382.

Essentially Nunn argues that she should have been permitted to continue working in the trimmed-down version of the Principal Performance Consultant position that she had just prior to her termination. But "the ADA does not require employers to create new positions." *Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002); *see Jackson*, 414 F.3d at 813 (explaining that employers need not

manufacture jobs that will allow employee to work despite disability). If Nunn's argument is that the Board was obligated to accommodate her by limiting her to desk work, it still fails: reducing her previously assigned duties is not a reasonable accommodation. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 819 (7th Cir. 2004) (disabled employee's proposal that entailed altering essential functions of his job was request for new position, not reasonable accommodation). The record shows that Nunn's field duties had to be farmed out to other employees, and requiring another person to perform an essential function of a disabled employee's job also is not a reasonable accommodation. *See Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002).

Nunn also challenges the district court's grant of the Board's motion to strike. In her response to the motion for summary judgment, Nunn alleged that the Board had reneged on a promise to reinstate her with back pay if a psychiatrist cleared her to work. That offer was made in early 2004 during negotiations to settle Nunn's administrative charge before she received her right-to-sue letter. If the Board entered into a settlement agreement with Nunn and later reneged, Nunn could sue to enforce the contract. But the evidentiary issue is irrelevant now, because Nunn argues that the Board's refusal to rehire her is "additional evidence of pretext." We have concluded that Nunn is not a qualified person with a disability for purposes of the ADA, and so we do not reach the question whether the Board's reasons for firing her were pretextual.

AFFIRMED.