**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 13, 2006
Decided January 11, 2007

**Before**

Hon. RICHARD A. POSNER , *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 05-4009

| | |
|---|---|
| BRENT L. MILLER, | Appeal from the United States District |
|     *Plaintiff-Appellant,* | Court for the Northern District of |
|   *v.* | Illinois, Eastern Division |
| | |
| | No. 02 C 2286 |
| AMERITECH CORPORATION, | |
|     *Defendant-Appellee.* | Joan Humphrey Lefkow, |
| | *Judge.* |

**ORDER**

After agreeing in a workers' compensation settlement to pay Brent Miller for the next 29 years due to his "alleged incapacity to pursue his employment," Ameritech terminated him in 1998 from his position as a cable splicing technician. Miller sued Ameritech for not accommodating his disability and for retaliating against him in violation of the Americans with Disabilities Act. The district court granted summary judgment in Ameritech's favor on both claims. We affirm.

Brent Miller began working at Ameritech as a cable splicing technician in early 1992. Within a year on the job, he suffered a hernia that required surgery. Following surgery in 1993, Miller began to suffer from groin, testicular, knee, back

and hip pain, pain during sexual intercourse, urine leakages, stomach ulcers, migraines, weakness in his right leg, back spasms, and fibromyalgia.

Miller went on workers' compensation leave for the remainder of 1993, and returned to Ameritech on light duty for the first half of 1994. During this period, Miller asked his supervisor, Jevan Jaszekowski, if he could transfer to a work site closer to home. Jaszekowski responded sarcastically, "I suppose if you move to fucking Paris, we would have to transfer you there as well." In addition, Kevin Kantor, the human resources official responsible for administering workers' compensation, denied the transfer and often complained to Miller about the number of medical bills Ameritech was paying on his behalf.

In late 1994 Miller underwent a second surgery, went back on workers' compensation, and performed no more work for Ameritech. In 1997 Miller says that he asked to return to work with accommodations. At that time, Miller asked his then-attorney to inform Ameritech that he wanted: (1) a bucket truck assignment and no ladder climbing; and (2) no lifting of more than seventy pounds without assistance. But according to Ameritech's job description and qualifications for a cable splicing technician, the technician must be able to work in manholes, trenches, and on poles and ladders. And at his deposition, Miller admitted that on any given day, a cable splicing technician might need to climb ladders and lift heavy objects.

In January 1998 Miller settled his workers' compensation claim with Ameritech. According to the settlement, payments to Miller were to continue "for the remaining 29.8 years of [his] alleged incapacity to pursue his employment." Citing the settlement agreement, Ameritech terminated Miller in April 1998.

Miller's medical problems appear to stem from nerve damage that occurred during his first surgery. Dr. Samuel Elias, an orthopedic surgeon who began treating Miller in 1995, explained that "it is pretty standard anatomical knowledge" that the nerves which Miller damaged can affect the gait, and that he believed Miller's medical problems resulted from a change in gait patterns. But when Ameritech asked Dr. Elias at his deposition whether Miller was substantially limited in "performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working" in 1998, Dr. Elias responded, "the answer is no."

Miller himself provided seemingly contradictory assessments of his own condition. At his deposition, Miller was asked, "so you felt you were not substantially limited in any major life activity at the time of your discharge, right?", to which Miller responded, "correct." But in paragraph six of an affidavit he submitted in opposition to summary judgment, Miller asserted that "since 1993, including during 1997 and 1998" his conditions "have substantially limited by [sic]

ability to engage in sexual relations, urinate, walk long distances, stand or sit for long periods of time, climb ladders safely and drive long distances."

In 2002 Miller sued Ameritech in federal court alleging discrimination and retaliation in violation of the ADA. The district court granted summary judgment in Ameritech's favor on both claims. The court first struck paragraph six of Miller's affidavit, finding that it contradicted his deposition testimony where he stated that he was not substantially limited in a major life activity. Then, finding Miller's deposition testimony dispositive of the issue, the court concluded that Miller was not disabled within the meaning of the ADA, and thus could not sustain his discrimination claim. As to Miller's retaliation claim, the court concluded that Miller did not meet his burden under the indirect method, and could not proceed under the direct method because he had not presented any direct evidence.

We review the district court's grant of summary judgment *de novo. Rudin v. Lincoln Land Cmty. Coll.,* 420 F.3d 712, 719 (7th Cir. 2005). The nonmovant, here Miller, bears the burden of coming forward with properly supported arguments or evidence to show the existence of a genuine issue of material fact. *Treadwell v. Office of Ill. Sec'y of State,* 455 F.3d 778, 781 (7th Cir. 2006).

We turn first to Miller's discrimination claim. The ADA protects only "qualified individual[s] with a disability" from discrimination. 42 U.S.C. § 12112(a). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more of the major life activities. . . ", *id.* § 12102(2)(A), and defines a qualified individual as a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position such individual holds or desires", *id.* § 12111(8).

Miller argues that the district court erroneously found him not to be disabled. He explains that he misunderstood the question posed at his deposition about whether he was "substantially limited in a major life activity." He asserts that the legal significance of that phrase confused him, and contends that paragraph six of his affidavit clarifies his response by describing his limitations in specifically factual, rather than legal, terms. He argues, therefore, that the district court should not have struck the paragraph. Miller contends that if the district court had considered paragraph six, the court would have found "more than sufficient evidence" of a question of fact concerning whether he has a disability because the paragraph tends to establish that he is "substantially limited" in "major life activities."

We review the striking of an affidavit in a motion for summary judgment for an abuse of discretion. *Balderstein v. Fairbanks Morse Engine Div. Coltec Indus.,* 328 F.3d 309, 318 (7th Cir. 2003). A party cannot defeat summary judgment by

creating "sham issues of fact with affidavits that contradict their prior depositions." *Ineichen v. Ameritech,* 410 F.3d 956, 963 (7th Cir. 2005). Thus, "when a deposition and an affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner. . . ." *Velez v. City of Chicago,* 442 F.3d 1043, 1049 (7th Cir. 2006) (quoting *Amadiu v. Ford Motor Co.,* 278 F.3d 919, 926 (7th Cir. 2001).

Miller might very well have been confused at his deposition. Deciphering the meaning of the statutory language "substantially limited in a major life activity" has, after all, been the elusive goal of numerous regulations, circuit court opinions, and two Supreme Court certiorari grants. *See* 45 C.F.R. § 84.3(j)(2)(I) (2001); 29 C.F.R. § 1630.2(j)(I); *Toyota Motor Mfg., Ky., Inc. v. Williams,* 534 U.S. 184 (2002); *Albertson's Inc. v. Kirkingburg,* 527 U.S. 555 (1999); *EEOC v. Sears, Roebuck & Co.,* 417 F.3d 789, 797-802 (7th Cir. 2005).

But we need not decide whether striking paragraph six amounted to an abuse of discretion because the paragraph does not—as Miller insists—help create a genuine issue of fact regarding his possible disability. "To survive summary judgment, a plaintiff must provide specific facts as to whether he is substantially limited in a major life activity . . . conclusory allegations will not do." *Scheerer v. Potter,* 443 F.3d 916, 919 (7th Cir. 2006). Paragraph six, however, does not specifically identify—as the law requires—the major life activity in which Miller purports to be substantially limited. *See Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship,* 209 F.3d 678, 683 (7th Cir. 2000). And although we have recognized that of the activities listed, walking and sexual reproduction are major life activities, *see Scheerer,* 443 F.3d at 919, paragraph six contains no evidence tending to establish that Miller's limitations are substantial. For example, when walking is the major life activity at issue, a plaintiff must demonstrate that his limited ability to walk is permanent or covers a long period of time and is considerable compared to the walking most people do in their ordinary lives. *See Sears,* 417 F.3d at 802. But paragraph six does not indicate how far Miller is unable to walk, why he is unable to walk, or how long he likely will be unable to walk.

In addition, even if Miller were disabled for ADA purposes, his discrimination claim would still fail because he is not a "qualified individual" for the position of cable splicing technician. Miller, without elaboration, baldly asserts that with a bucket truck assignment and a co-worker to do his heavy lifting, he is qualified. But the ADA protects only disabled individuals who—when reasonably accommodated—can still perform the essential functions of their position. *See* 42 U.S.C.§ 12111(8). In other words, "[w]hen accommodated, the worker must be able to do the job as configured by the employer; not his own conception of the job." *Hansen v. Henderson,* 233 F.3d 521, 524 (7th Cir. 2000). According to Ameritech's

job description and Miller's *own admission*, the tasks he sought exemption from—climbing ladders and heavy lifting—were essential functions of the job. *See Rooney v. Koch Air, LLC,* 410 F.3d 376, 382 (7th Cir. 2005) (looking to the employer's judgment, written job descriptions, the amount of time spent on the function, and the experience of those who previously or currently hold the position to determine whether a job function is essential). Placing a co-worker at Miller's disposal to perform these functions for him would not be a "reasonable accommodation." We have explained that "the courts have been reticent, as they should be, to require employers to provide accommodations that necessitate the enlistment of another employee to assist an ADA claimant in performing the essential functions of the job." *Hammel v. Eau Galle Cheese Factory,* 407 F.3d 852, 867 (2005) (citations omitted). Summary judgment on Miller's discrimination claim was properly granted.

We turn next to Miller's retaliation claim. The ADA prohibits retaliation against "any individual" who has opposed an act or practice made unlawful by the ADA. 42 U.S.C. § 12203(a). To prove retaliation, a plaintiff may use either the direct or indirect method. *See Treadwell,* 455 F.3d at 781.

Miller argues that Jaszewski's and Kantor's comments constitute sufficient circumstantial evidence to defeat summary judgment under the direct method. He contends that the district court erroneously concluded that the direct method was foreclosed to him because he had not presented any "direct evidence."

Although plaintiffs may proceed under the direct method provided that they adduce *either* direct evidence *or* circumstantial evidence that would entitle a jury to conclude that an employer acted because of a forbidden animus, *see Sylvester v. SOS Children's Villages Ill, Inc.,* 453 F.3d 900, 902-03 (7th Cir. 2006), Miller has failed to produce even sufficient circumstantial evidence to survive summary judgment under the direct method. To have done so, Miller must have established a causal connection between his protected activity and the adverse employment action that he suffered. *Treadwell,* 455 F.3d at 781. This causal connection cannot be demonstrated through "[s]tray remarks made by nondecisionmakers." *Mlynczak v. Bodman,* 442 F.3d 1050, 1057-58 (7th Cir. 2006) (citation omitted). But there is no evidence that either Jaszewski or Kantor had any involvement in the decision to terminate Miller. And even if they were meaningfully involved, their purported comments do not demonstrate that either of them harbored a retaliatory animus: they made these comments before Miller filed his charge with the EEOC, and before he asked to return to work with accommodations. Thus, under the direct method, Miller has not met his burden. (Miller does not argue in his brief that the district court improperly granted summary judgment under the indirect method, and so any such argument is waived. *Moore v. J.B. Hunt Transport Inc.,* 221 F.3d 944, 951 (7th Cir. 2000).)

Accordingly, the judgment is AFFIRMED.